**Griffin W. HOWARD, Plaintiff,**

v.

**EXECUTIVE LEASING COMPANY,
Defendant.**

No. 70 C 369(1).

United States District Court,
E. D. Missouri, E. D.

May 9, 1972.

W. W. Sleater, St. Louis, Mo., for plaintiff.

Edgar G. Boedeker, Clayton, Mo., for defendant.

FINDINGS OF FACT
AND
CONCLUSIONS OF LAW

MEREDITH, Chief Judge.

*Findings of Fact*

1. Plaintiff brought this action under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C.A., sections 201–219, for claimed unpaid minimum wages, claimed unpaid overtime compensation, liquidated damages, and attorney's fees. The case was tried before the Court without a jury.

2. Defendant has its principal place of business in St. Louis and St. Louis County, Missouri, and was engaged in the business of leasing new automobiles to customers and then servicing such automobiles on lease. Most, if not all, leases for new automobiles were for a period of two years.

3. Defendant's business activities in the leasing of new automobiles were also conducted in states other than the State of Missouri, and the defendant was engaged in interstate commerce.

4. That portion of defendant's business in which plaintiff participated consisted mainly of the delivery and return of leased automobiles in interstate commerce to and from defendant's customers located outside the metropolitan St. Louis area. Plaintiff would drive a new automobile from defendant's offices in St. Louis County, Missouri, to a customer located outside the metropolitan St. Louis area, and would drive back to St. Louis with the old automobile formerly leased by the customer. Sometimes the

situation varied in that there might be one or two automobiles to be returned from a distant location, but no automobile to be delivered, or there might be one or two automobiles to be delivered and one or none to be returned.

5. Prior to late summer of 1967 and before plaintiff ever performed services for the defendant, he had been transporting automobiles for several other leasing organizations and automobile dealers principally in the metropolitan St. Louis area for some period of years. The manner in which plaintiff worked for other leasing organizations in the St. Louis area was identical to the services performed for defendant.

6. Plaintiff commenced performing services for defendant in late summer or early fall, 1967, and was paid by defendant for driving its automobiles on a mileage basis, determined by considering the distance to be traveled and the number of automobiles to be delivered or returned. Plaintiff paid his own expenses, including lodging and gasoline and oil for the automobile being driven, and received no reimbursement from defendant. Where major repairs or major items of maintenance became necessary for a particular automobile, defendant reimbursed plaintiff for such repairs or maintenance. Plaintiff arranged and paid for his own transportation to or from the particular location, as needed, if no automobile was available.

7. It was customary for automobile drivers, such as plaintiff, to arrange with various automobile dealers, auctioneers, or leasing companies in and around the St. Louis area to transport one or more automobiles for such organizations to the location where a driver already had contracted to pick up an automobile for return to St. Louis.

8. When drivers would have no means of returning to St. Louis other than at their own expense, they would contact such organizations in the particular location to which they had delivered an automobile and make arrangements to drive automobiles to St. Louis, or some nearby area.

9. At all times, defendant's compensation to plaintiff was in accordance with industry practice and custom of compensating independent contractors. At no time was withholding made from plaintiff's compensation for federal or state income taxes, Social Security taxes, or any employees benefits.

10. During the period in question, up to July 14, 1970, the defendant utilized the services of many persons, approximately eighteen persons, including plaintiff, in making out-of-town deliveries or pickups of automobiles. The majority of such persons were salaried employees of defendant, who made such deliveries and pickups on weekends or during vacation periods. The remaining three or four persons, including plaintiff, who were not considered by defendant to be regular employees, but rather independent contractors, picked up and delivered automobiles during all portions of the week and year. Defendant did not treat plaintiff as a salaried employee, but at all times treated him as an independent contractor.

11. During the period in question, plaintiff transported cars for at least six other firms in the St. Louis area: Auto Driveaway, Manchester Lend-Lease, Feld Chevrolet, Charlie's Chevrolet (Bill James Chevrolet), Pappas Ford (Gateway Ford), and Accon Transport. Plaintiff was often contacted by these other concerns to transport automobiles for them and frequently accepted, particularly where defendant required an automobile brought back from a distant location, but had no automobile to be transported to that location at the time. Plaintiff held himself out to other organizations in the metropolitan St. Louis area and elsewhere as an independent automobile driver for hire, and offered his services to organizations other than defendant.

12. In many instances, plaintiff utilized the services of either his son or stepson, or both of them, to drive auto-

mobiles which plaintiff had agreed to transport for defendant and for other organizations, or to assist plaintiff on a particular trip. In the majority of cases, payment for the services performed by the son or stepson was made directly to plaintiff or to the son or stepson in plaintiff's name. Much of the work involved in attaching two bars between the automobiles for transit was performed by plaintiff's son or stepson. Plaintiff used his own tools and equipment, for the most part, and maintained such tools and equipment at his own expense.

13. At all times in performing the services he rendered to defendant, plaintiff treated himself, and held himself out as, an independent contractor and not as a salaried employee.

14. Plaintiff was compensated for the services he, his son, or his stepson, performed for defendant in the form of defendant's checks. Defendant paid plaintiff for his services in amounts of $880.80 for the fall of 1967; $6,363.11 for 1968; $6,864.69 for 1969; and $4,518.33 for January 1 to July 14, 1970. Plaintiff received additional amounts from other auto leasing companies and directly from defendant's customers, but these amounts were not shown in evidence. Plaintiff did not file income tax returns for the years in question.

15. Defendant billed its customers for the services performed by plaintiff and the other drivers on each trip in the same amount as defendant paid plaintiff and the other drivers. Defendant realized no profit in providing to its customers the services of plaintiff or its other drivers.

16. There was no supervision or control by defendant or any of its employees or officers over plaintiff or his activities. No time limit was set for making any particular deliveries, nor was any route designated by the defendant. There was no regulation or control by defendant of plaintiff's hours or methods of work.

17. There was no competent and substantial evidence adduced whereby the Court could find and determine, even by approximation, the number of hours worked by plaintiff on any given trip or in any given week.

18. Plaintiff's services were terminated by defendant in July of 1970, after plaintiff had been involved in the last of three major automobile collisions he had while transporting leased automobiles owned by defendant.

*Conclusions of Law*

1. Plaintiff was an independent contractor and not an employee of defendant. He is not entitled to recover any sums for unpaid minimum wages, unpaid overtime compensation, litigated damages, or attorney's fees.

2. Plaintiff failed to sustain his burden of proof. This cause will be dismissed with prejudice.